In re Ali JOOBEEN, Debtor.

Ali Joobeen, Appellant,

Michael Tsokas, Creditor; Ceil Joobeen, Interested Party; Orang Joobeen, Interested Party; Kelly Clark, Interested Party; William C. Miller, Trustee; and United States Trustee, Trustee, Appellees

and

In re Jian Joobeen, a Minor, by
Ali Joobeen, his guardian
& trustee, Debtor.

Kelly Clark, Intervenor, Appellant,

Jeffrey T. Grossman, Interested Party; Aaron Pogach, Interested Party; William C. Miller, Trustee; and Frederick Baker, Trustee, Appellees

and

In re Jian Joobeen, a Minor, by
Ali Joobeen, his guardian
& trustee, Debtor.

Jian Jobeen, Appellant,

Jeffrey T. Grossman, Interested Party; Aaron Pogach, Interested Party; William C. Miller, Trustee; and Frederick Baker, Trustee, Appellees.

Civil Action Nos. 07–CV–
2736 to 07–CV–2738.
Bankruptcy Nos. 06–15749–
dws, 06–15752–dws.

United States District Court,
E.D. Pennsylvania.

March 27, 2008.

600

David A. Scholl, Esquire, On behalf of Appellants.

William C. Miller, Esquire, On behalf of Appellee William C. Miller, Chapter 13 Standing Trustee.

## OPINION

JAMES KNOLL GARDNER, District Judge.

This matter is before the Court on three consolidated appeals from the May 23, 2007 Order and accompanying Memorandum Opinion of Chief Judge Diane W. Sigmund of the United States Bankruptcy Court for the Eastern District of Pennsylvania. These bankruptcy appeals were docketed in the United States District Court for the Eastern District of Pennsylvania on June 29, 2007.

By my Order dated August 24, 2007 these three appeals were consolidated. By Order dated December 5, 2007, I scheduled an argument on the consolidated appeals. On February 12, 2008 I conducted oral argument on the appeal.[1]

---

1. By two Orders both dated January 25, 2007 in the Chapter 13 bankruptcy cases of Ali Joobeen (bankruptcy no. 06–15749–dws) and Jian Joobeen, a Minor, by Ali Joobeen, his Guardian and Trustee (bankruptcy no. 06–15752–dws), Chief Bankruptcy Judge Sigmund disqualified Aaron Pogach, Esquire (a creditor) from representing Dr. Michael Tsokas (a separate creditor). On August 21, 2007 the Brief of Dr. Michael Tsokas and Aaron Pogach, Esquire Creditors of Ali Joobeen was filed.

During oral argument I indicated that the joint brief of Attorney Pogach and Dr. Tsokas would be stricken. Specifically, because neither creditor had sought relief from the bankruptcy court's disqualification Orders, and without deciding the correctness of those decisions, I ruled that the law-of-the-case doctrine precluded my consideration of their joint brief. *Hamilton v. Leavy*, 322 F.3d 776, 786–787 (3d Cir.2003).

Additionally, based upon those same grounds, I prohibited Attorney Pogach from representing Dr. Tsokas during oral argument. However, I permitted Attorney Pogach

Chief Judge Sigmund's final Order dated May 23, 2007 dismissed the Chapter 13 bankruptcy cases of Ali Joobeen (bankruptcy no. 06–15749–dws) and Jian Joobeen, a Minor, by Ali Joobeen, his Guardian and Trustee (bankruptcy no. 06–15752–dws).

For the reasons expressed below, I affirm in part the decision of the United States Bankruptcy Court and I remand in part for further proceedings consistent with this Opinion.

## JURISDICTION

This Court has subject matter jurisdiction of this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

## FACTS[2]

On December 4, 2006 debtor Ali Joobeen ("Ali")[3] filed a Chapter 13 bankruptcy case (case number 06–15749–dws). On December 4, 2006 Ali filed a second Chapter 13 bankruptcy case (case number 06–15752–dws) as "guardian and trustee" for his seven-year-old son Jian Joobeen ("Jian").

These bankruptcy filings stayed a sheriff's sale which was scheduled for December 4, 2006 for the residential rental property located at 3315 Park Avenue, Philadelphia, Pennsylvania 19140 ("Park Avenue Property"). The Park Avenue Property is held by a trust created by Ali Joobeen for the benefit of his son Jian. The trust is administered by Ali and his former wife Kelly Clark (who is Jian's mother).[4]

On March 1, 2007 Michael Tsokas, a creditor of Ali, filed a motion to dismiss Ali's case with prejudice, and filed motions for relief from the automatic bankruptcy stay in both Ali and Jian's cases. On March 12, 2007 the Chapter 13 Standing Trustee, William C. Miller, Esquire filed a motion to dismiss Jian's case with prejudice.

On April 19, 2007 Chief Judge Sigmund held a hearing on various motions that were pending in this cases, including the Petition of Kelly Clark to Intervene Requesting Jury Trial With Incorporated Motion to Quash Michael Tsokas' Motion Scheduled for a Hearing on Thursday April 19, 2007 in Courtroom 3 Before the Honorable Diane W. Sigmund, which motion to intervene was filed April 17, 2007.

Kelly Clark's motion to intervene sought to intervene as of right. At the April 19, 2007 hearing Chief Judge Sigmund orally denied the motion to intervene without prejudice. The court noted that Ms. Clark appeared to have no interest in the motions which the bankruptcy court would be considering during the proceeding.

On April 27, 2007 Chief Judge Sigmund held a hearing on the two motions to dismiss and the two motions for relief from the bankruptcy stay in Ali and Jian's cases. The transcript of the hearing reveals that the answers which Ali gave were often non-responsive to the questions asked and that his behavior during the hearing was disruptive.

While testifying, Ali insulted the staff attorney of the Chapter 13 Standing Trus-

---

to represent his own interests as a creditor of debtor Ali Joobeen.

**2.** The facts recited here are drawn from the May 23, 2007 Order and accompanying Memorandum Opinion of Chief Judge Sigmund as well as the facts contained within the appellate record.

**3.** Because debtors Ali Joobeen and Jian Joobeen have the same last name, I will refer to them in this Opinion by their respective first names.

**4.** The parties dispute whether this transfer was procedurally defective and whether the transfer was a fraudulent conveyance.

tee multiple times. As a result of his contumacious behavior, and after being warned that his conduct would preclude him from offering further testimony, Chief Judge Sigmund removed Ali from the witness stand and precluded him from offering further testimony.

On May 23, 2007 Chief Judge Sigmund issued an Order and accompanying Memorandum Opinion. The Opinion granted the motions to dismiss Ali's and Jian's cases as having been filed in bad faith. The Opinion details the tumultuous history of these bankruptcy cases, including reviewing multiple state court proceedings, multiple Chapter 13 petitions, the record evidence in the case and the evidence adduced at the April 27, 2007 hearing.

The bankruptcy court then engaged in a bad faith inquiry utilizing the factors of *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996). After thoroughly reviewing the factors governing the bad faith inquiry, the bankruptcy court ultimately concluded that both Chapter 13 cases had been filed in bad faith.

Based upon the its determination that Ali is a serial bad faith filer, the bankruptcy court also concluded that prospective relief from the automatic bankruptcy stay was appropriate. Thus, the bankruptcy court awarded relief from the automatic bankruptcy stay as to the Park Avenue Property in the event that Ali sought to file a future bankruptcy petition to prevent foreclosure by the courts of the Commonwealth of Pennsylvania.

Specifically, as applicable, Chief Judge Sigmund's Order provided the following relief: (1) Ali Joobeen and Jian Joobeen or any trustee or guardian of Jian Joobeen may not file further bankruptcy petitions without leave of this Court; and (2) any bankruptcy petition subsequently filed shall not serve as stay of state law proceedings with respect to the real property located at 3315 Park Avenue, Philadelphia, Pennsylvania.

## CONTENTIONS

### Appellants

Appellants argue that the bankruptcy court's May 23, 2007 Order was improper in all respects for multiple reasons. Appellants contend that the relief granted by the bankruptcy court was in excess of the relief sought in the motions the court had before it. Appellants assert that the motions before the bankruptcy court sought relief from the automatic stay in both cases and sought an Order that any future filing by either debtor would not operate as a stay for 180 days. Appellants claim that the motions to dismiss did not focus on the bad faith filing aspect of the case.

With regard to Jian's case, appellants aver that Jian had moved to waive the Chapter 13 credit counseling requirement. Therefore, appellants contend that the failure to obtain credit counseling was an improper basis for the court to penalize Jian.

Appellants also assert that the bankruptcy court's Order improperly grants relief against Kelly Clark, as trustee and guardian, although she is not and was not a resident of the Park Avenue Property, and although such relief was not within the request of the stay motions.

Moreover, appellants contend that read literally, the Order precludes Ali, Jian and Kelly Clark from ever filing a bankruptcy case at any time without leave of court, and also precludes the automatic bankruptcy stay from coming into effect if any subsequent owner of the Park Avenue Property ever files for bankruptcy.

Appellants argue that the bankruptcy court misread the plans and schedules offered in both Ali and Jian's bankruptcy

petitions and erred by concluding that the plans were not feasible.

Appellants allege that the bankruptcy court improperly applied the bad faith determination factors. Appellants further aver that the bankruptcy court incorrectly concluded that they were using the bankruptcy as a less costly alternative to proceeding before the Superior Court of Pennsylvania (because they did not have to post a bond). Appellants also claim that the bankruptcy court then improperly refused to hear or consider appellants' objections to creditors' claims, which might have been disallowed. Among the alleged erroneous bad faith determinations, appellants assert that the bankruptcy court incorrectly concluded that the plans of the debtors were underfunded and that Ali's defenses against his creditors' claims were obstructionist.

Appellants contend that Ali and Jian are debtors who do not fit the typical mold of those sanctioned for bad faith filings. Appellants argue that the worst activity in which they have engaged was the offense given to the bankruptcy court while Ali was in the process of being cross-examined.

Appellants claim that the Chapter 13 Standing Trustee is biased and has refused to acknowledge documentary evidence which establishes that the debtors have promptly made all of their post-petition payments.

Appellants also assert that the bankruptcy court erred in imposing a sanction which effectively precluded their ability to present a defense in the action. Appellants contend that before a court imposes sanctions: (1) the party sanctioned must be provided with prior notice of the sanctionable conduct, including the specific sanctions contemplated; (2) the sanctioned party must be given an opportunity to mount a defense; (3) the court must fully and fairly consider the sanctions; and (4) due consideration must be given to the extent of the offending party's personal responsibility, the history of the conduct, whether the conduct was willful and in bad faith, the merits of the claim, prejudice to the other parties and the appropriateness of alternative sanctions, particularly where sanctions involve actions which affect the determination of the merits (as opposed to monetary penalties).

Appellants argue that under this framework, refusing to allow Ali to complete his testimony and refusing to allow Jian and Ms. Clark to present a defense was an excessive and inappropriate sanction. Moreover, because appellants faced new issues which were raised for the first time by the court, appellants allege that this sanction was particularly prejudicial.

Appellants aver that Chief Judge Sigmund's inappropriate sanction requires this case to be remanded for a hearing concerning whether Ali's conduct merited any sanctions and whether the sanction imposed was appropriate. Moreover, appellants also contend that because Chief Judge Sigmund's own actions reflect a bias against appellants, this matter should be assigned to another bankruptcy judge upon remand.

Appellants claim that Jian and Ms. Clark have significant interests in the Park Avenue Property which they seek to defend. Appellants assert that Jian is the "beneficial owner of the Property" and Jian and Kelly Clark formerly resided at the property. Appellants aver that the creditors have no claims against Jian or Ms. Clark and that it is unclear how their property can be the subject of execution based upon a judgment against Ali.

Moreover, appellants allege that it is unfair that the interests of either Jian or Ms. Clark should be adversely affected by

the actions of Ali. Appellants also argue that because Jian had no control over Ali's filings, the actions of Ali should not be attributed to Jian.

Appellants further assert that Kelly Clark's interests are profoundly and adversely impacted by the bankruptcy court's Order. Appellants aver that Ms. Clark was denied the ability to intervene (after concluding she had no interests in the proceedings) and claim that it was error to preclude her from filing for bankruptcy during the rest of her life because she is a "trustee or guardian of Jian".

### Appellee

Appellee William C. Miller, the Chapter 13 Standing Trustee, contends that the bankruptcy court correctly issued its Order dismissing Ali and Jian's bankruptcy cases. Based upon the totality of the circumstances, including more than just a superficial financial analysis of the proposed Chapter 13 plans, appellee argues that the bankruptcy court correctly decided the matters before it.

Appellee alleges that appellants' attempts to explain why their plans are feasible are erroneous. Appellee avers that appellants filed an amended Disclosure of Compensation form in both cases on June 5, 2007 after the cases had been dismissed. Appellee asserts that these documents make clear that the plans remain unfeasible even if Chief Judge Sigmund erred in her understanding of the plans.

Appellee contends that the bankruptcy court thoroughly and correctly analyzed the conduct of appellants under the "good faith" standards set forth in *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996), including more than just a superficial analysis of the debtors' plans.

Appellee argues that appellants' attempts to "explain away Ali's conduct at the April 27, 2007 hearing" and suggestions that the sanctions were too severe are without merit. Appellee claims that the designation of items to be included on appeal includes a motion to disqualify Jacqueline C. Chandler, Esquire, (the staff attorney of the Chapter 13 Standing Trustee), which was "filed but not docketed". Appellee asserts that this motion is wholly improper.[5] Appellee alleges that this motion evidences the overwhelming bad faith of appellants. Appellee avers that this was an attempt by appellants to have the district court review a motion which was not first considered by the bankruptcy court and whose contents are scandalous and defamatory.

Appellee asserts that the Appellants' Brief also displays the type of bad faith antics which caused the bankruptcy court to properly invoke its sanction power. Appellants' Brief was filed weeks after the hearing, yet accuses the Chapter 13 Standing Trustee and his staff attorney of acting inappropriately in this matter.

Specifically, appellee contends that appellants' brief states that: (1) the trustee's staff attorney has acted to the detriment of other creditors and in violation of her duties; (2) the trustee's staff attorney persisted on discussing occurrences at the meeting of creditors; (3) the bankruptcy court provided even broader relief than the "malicious and fertile imaginations of the Creditors themselves could conjure" and that Attorney Chandler "had exhibited bias against the Debtors and has used her office for that purpose. . . ."

Appellee claims that appellants' pattern of behavior is telling. Appellee argues that appellants have accused their creditors of bad faith and fraudulent conduct,

---

**5.** The motion to disqualify was not ultimately included in the appellate record, although it does appear in the designation of items to be included in the appeal.

accused the Chapter 13 Standing Trustee of acting to the detriment of creditors in violation of his duties and accused the bankruptcy judge of bias. Appellee alleges that there is no evidence to support these unfounded allegations and that such behavior suggests that appellants have no intention to reorganize.

Appellee avers that it is clear from the transcript of the April 27, 2007 hearing that Ali and Kelly Clark established a trust, ostensibly for the benefit of Jian, which owned the Park Avenue Property. During his sworn testimony, Ali acknowledged the following: (1) he transferred the Park Avenue Property to the trust for the benefit of Jian; (2) the property is currently being rented, which is how the trust generates income; (3) the trust has its own account; and (4) the trust has both income and debts.

Appellee contends that as a general matter trusts are not eligible for relief in bankruptcy. Appellee claims that although a debtor may institute a bankruptcy strictly in his capacity as trustee, this exception is limited to situations in which the entity on whose behalf the trustee is acting could itself be a debtor (such as a business trust).

Appellee asserts that because Ali filed as a trustee of Jian's trust, and the trust at issue is not a business trust, Jian's case must fail. Moreover, if the property is held by the trust and the rental income is paid to the trust, appellee alleges that Jian does not appear to be an individual with regular income as required by 11 U.S.C. § 109(e).

Appellee contends that Ali's prior filings are properly attributed to Jian. Appellee argues that although the Park Avenue Property was transferred to a trust for the benefit of Jian, Ali became the trustee, which permitted Ali to continue controlling the property and any income derived from the property. Appellee avers that there is only one person filing all of these cases, and that person is Ali. Therefore, appellee asserts that it is perfectly appropriate to attribute the filings of Ali to Jian.

Appellee also claims that Jian's motion to waive the credit counseling requirements, 11 U.S.C. § 109(h), was filed significantly late in the bankruptcy proceedings. The motion was filed on April 23, 2007, four months after the case was filed and on the eve of dismissal hearings. Appellee alleges that until such time as an appropriate determination has been obtained from the bankruptcy court, after notice and hearing, an individual who has not received credit counseling cannot be a debtor.

Appellee asserts that it is also not unfair that Ms. Clark's interests have been affected as a result of the bankruptcy court's Order. Appellee avers that it is clear from the docket entries and April 27, 2007 hearing that Ms. Clark has been a willing participant in the bankruptcy proceedings as well as in establishing and maintaining Jian's trust.

Appellee also contends that Ms. Clark lacks standing in this matter and is therefore an improper party for the purposes of the appeal. Appellee alleges that Ms. Clark would only be involved as a trustee or guardian of Jian, which is precisely the role being performed by Ali on behalf of Jian. Appellee claims that it is the trust which is the actual party, of which Ali and Ms. Clark are trustees.

Appellee argues that the bankruptcy's court's decision is clear that Kelly Clark is precluded from filing a bankruptcy petition as a guardian or trustee of Jian, but that the Order does not affect her personal interests. Appellee avers that Ms. Clark relinquished control over the Park Avenue Property when she and Ali decided it was prudent to transfer their interests in the

property to a trust. Appellee asserts that the bankruptcy court's Order does not diminish her property, increase her burdens or impair her rights, especially because the interests of the trust are being advocated by Ali.

## STANDARD OF REVIEW

On appeal, a district court may affirm, modify, or reverse a bankruptcy judge's judgment, Order, or decree or remand with instructions for further proceedings. Fed.R.Bankr.P. 8013. The legal determinations of a bankruptcy court are reviewed de novo. *Sovereign Bank v. Schwab*, 414 F.3d 450, 452 n. 3 (3d Cir.2005)(internal citations omitted). The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard. *Id.*

A bankruptcy court's decision to dismiss the bankruptcy case as a bad faith filing is reviewed for abuse of discretion. *In re Myers*, 491 F.3d 120, 125 (3d Cir.2007)(citing *In re SGL Carbon Corporation*, 200 F.3d 154, 159 (3d Cir.1999)). The United States Court of Appeals for the Third Circuit has held that the bad faith determination is "a fact intensive determination better left to the discretion of the bankruptcy court." *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996) The bankruptcy court's factual finding supporting a bad faith determination will not be set aside unless they are clearly erroneous. *In re Myers*, 491 F.3d at 125.

A bankruptcy court's imposition of sanctions, whether under its inherent power or pursuant to a specific statute or rule of procedure, is reviewed for abuse of discretion. *Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1223 (3d Cir.1995).

## DISCUSSION

Appellants in the matter have submitted a voluminous appellate record and have raised a plethora of issues and arguments in this appeal. The Chapter 13 Standing Trustee has responded to many, but not all, of the dizzying array of issues which were raised by appellants. Further complicating review of this matter is the fact that many of the arguments submitted by appellants contain few, if any, citations to legal authority and several amount to nothing more than innuendo and general dissatisfaction with the bankruptcy court's decision in this case.

In the following discussion of the legal issues raised in this appeal, I attempt to separate the arguments raised by appellants which have some arguable merit from those which are nothing more than generalized grievances or unsupported aspersions. Those issues which are ripe for disposition have been resolved and the remaining issues are remanded for further guidance from the bankruptcy court.

### Prospective In Rem Relief

A bankruptcy court is empowered to raise the issue of bad faith and make factual determinations to support a determination that a petition has been without a proper reorganization purpose. Section 105(a) of the Bankruptcy Code provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, **sua sponte,** taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a)(emphasis added).

Moreover, it is well-settled that bankruptcy courts "derive from § 105(a)

or § 349(a) of the Code ... the power to sanction bad faith serial filers ... by prohibiting further bankruptcy filings for longer periods than the 180 days specified by § 109(g)."[6] *In re LeGree,* 285 B.R. 615, 621 (Bankr.E.D.Pa.2002)(citing *In re Casse,* 198 F.3d 327, 337–338 (2d Cir.1999))(internal quotations omitted).

■ Appellants argue that the bankruptcy court erred by sua sponte awarding prospective relief beyond which was sought by the creditors in their motions for relief from the automatic bankruptcy stay in these two bankruptcy cases. With regard to the period of in rem relief from the automatic bankruptcy stay, appellants' argument has merit.

The creditors sought prospective relief from the automatic bankruptcy stay for 180 days. Notwithstanding the request, the bankruptcy court's May 23, 2007 Order states that "[a]ny bankruptcy petition subsequently filed shall not serve as a stay of state law proceedings with respect to the real property located at 3315 Park Avenue, Philadelphia, PA." In contrast, the accompanying Memorandum Opinion states that the stay shall only operate for the "180 day period requested."

As stated above, the bankruptcy court is empowered to grant in rem relief in excess of 180 days. Although it does not appear that the bankruptcy court intended to grant relief from the automatic stay beyond 180 days, this matter should be remanded to the bankruptcy court for clarification. Upon remand, the bankruptcy court's Order should be amended to reflect the bankruptcy court's true intent.

Accordingly, the appeal of the May 23, 2007 Order and accompanying Memorandum Opinion is granted and bankruptcy nos. 06–15749–dws and 06–15752–dws are remanded for the purpose clarifying the in rem relief awarded.

■ In other words, if the bankruptcy court concludes that a debtor has willfully violated its orders, it may prohibit further bankruptcy filings for a period of 180 days. However, if the debtor is a bad faith serial filer, the bankruptcy court may prohibit bankruptcy filings for longer than 180 days and it may do so sua sponte.

Here Chief Judge Sigmund's Order states that any future bankruptcy filing shall not stay any state law proceedings with respect to the Park Avenue, Philadelphia, rental property (which is the "in rem relief awarded"). However, the Order in that regard is open-ended and does not state for how long the relief from the automatic bankruptcy stay is being granted. Chief Judge Sigmund's Memorandum Opinion, on the other hand, states that the stay shall only operate for the "180 period requested."

Therefore, the matter is remanded for clarification of Chief Judge Sigmund's intent concerning for how long the relief from the automatic stay is being granted.

### Bad Faith

■ A bankruptcy filing made in bad faith may be dismissed "for cause" under 11 U.S.C. § 1307(c), although § 1307(c) does not explicitly mention the good faith requirement. *In re Myers,* 491 F.3d at 125. The bankruptcy court must

---

**6.** Section 109(g) of the Bankruptcy Code provides, in pertinent part:

(g) Notwithstanding any other provision of this section, no individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case....

11 U.S.C. § 109(g).

review the totality of the circumstances to determine bad faith, and may consider a wide range of factors, including: "the nature of the debt …; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *In re Lilley,* 91 F.3d 491, 496 (3d Cir.1996).

A bankruptcy filing during the pendency of related state court litigation is not necessarily in bad faith. *In re Myers,* 491 F.3d at 125. However, the suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in the bad faith analysis. See *In re Tamecki,* 229 F.3d 205, 208 (3d Cir.2000). Moreover, a bankruptcy court may reasonably find that bad faith exists "where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose." *In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994).

Upon review of the bankruptcy court's decision regarding the bad faith of Ali, I conclude that the bankruptcy court correctly applied the bad faith factors to Ali and Jian's bankruptcy cases. The bankruptcy court's factual findings were not clearly erroneous with regard to either Ali's or Jian's bankruptcy cases. The bankruptcy court's legal conclusions follow from its factual findings, which are more than sufficient to support a determination that Ali filed both his own Chapter 13 bankruptcy case and his son Jian's case in bad faith.

For example, the bankruptcy court appropriately looked to the dockets of Ali's cases in the courts of the Commonwealth of Pennsylvania and compared the filings in each case against Ali's bankruptcy filings. Based on this comparison the bank-

ruptcy court properly concluded that whenever a creditor of Ali took an adverse action against him in state court, Ali would file for bankruptcy. The correlation also demonstrated that when state court action was no longer imminent, Ali ceased his prosecution of his bankruptcy actions. Thus, these factual findings supported the bankruptcy court's finding that the timing of Ali's and Jian's bankruptcy cases indicated bad faith.

By way of further example, the bankruptcy court's conclusion that Ali had not been forthcoming with the court or with his creditors was also supported by sufficient evidence. A review of the schedules Ali submitted in both bankruptcy cases as well as Ali's sworn testimony demonstrated that he had made payments outside of his bankruptcy plans and that the plans were underfunded. Moreover, during his sworn testimony, Ali disclaimed responsibility for the contents of the plans, even though they were supported by an affidavit signed by Ali under penalty of perjury. Thus, the bankruptcy court's conclusions regarding Ali's candor were firmly grounded in the record facts before it.

The bad faith factors need not be re-applied at the appellate level. The bankruptcy court thoroughly and accurately stated the facts before it and correctly applied the law governing bad faith. However, I will briefly address one issue raised by appellants: whether the bankruptcy court had to accept appellants' contention that certain proofs of claim would be disallowed in concluding that the debtors' plans were underfunded.

The probability of success of the debtor's plan is the most important factor in evaluating the good faith of the petition. *In re Ferguson,* 376 B.R. 109, 121 (Bankr.E.D.Pa.2007)(citing *In re Morales,* 366 B.R. 919, 922 (Bankr.D.Neb.

2007)). Once a creditor alleges facts sufficient to support his claim, the proof of claim is prima facie valid. 11 U.S.C. § 502(a); *In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir.1992). "Once such a claim is alleged, the burden shifts to the debtor to produce evidence sufficient to negate the *prima facie* valid claim, that is, evidence equal in force to the *prima facie* case." *VFB LLC v. Campbell Soup Company*, 482 F.3d 624, 636 (3d Cir.2007)(internal citation and quotation omitted).

Under this standard, the bankruptcy court did not have to accept appellants' assertions regarding which creditor's claims had merit and which did not. The bankruptcy court is in a superior position to evaluate whether certain claims will be disallowed. Because the claims were sufficiently alleged, it was the debtors' burden to show that certain claims could be avoided. The bankruptcy court's conclusion that Ali's plan was underfunded was based on a proper review of the applicable proofs of claims and the totality of the circumstances of the case.

Accordingly, the May 23, 2007 Order and accompanying Memorandum Opinion of the bankruptcy court is affirmed insofar as it found that Ali Joobeen commenced bankruptcy nos. 06–15749–dws and 06–15752–dws in bad faith.

### Imputation of Bad Faith

 As a general matter, before a sanction may be imposed against a party, the court must provide the party to be sanctioned with notice of the conduct to be sanctioned, notice of the specific sanction to be imposed and an opportunity to be heard in defense. *See Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1225 (3d Cir.1995). Even after a finding of bad faith has been made, before the bad faith of one party is imputed to another, courts must make explicit findings that the imputation is appropriate. *See Poulis v. State Farm Fire and Casualty Company*, 747 F.2d 863 (3d Cir. 1984), which considered, among other factors, whether the failures of counsel should be attributed to their clients in setting aside a default and *Seitzinger v. The Reading Hospital and Medical Center*, 165 F.3d 236 (3d Cir.1999), which refused to impute the extraordinary conduct of an attorney to his client.

The May 23, 2007 Order and accompanying Memorandum Opinion of the bankruptcy court does not make any findings concerning whether the bad faith of Ali Joobeen should be imputed to Jian Joobeen or Kelly Clark. In the absence of such explicit findings, I cannot evaluate whether the bankruptcy court's sanctions against Jian Joobeen and Kelly Clark were appropriate.

Ali purports to represent Jian's interests, both as his guardian and as a trustee of the real estate trust for which Jian is purportedly a beneficiary. The facts found by the bankruptcy court make it abundantly clear that Ali was the party who brought and prosecuted Jian's Chapter 13 case. It may well be that the bad faith of Ali should be imputed to Jian. However, particularized findings must support any such finding.

Moreover, the plain terms of the May 23, 2007 Order appear to preclude Kelly Clark from filing any bankruptcy petitions without leave of the court because she is both a "trustee" and "guardian of Jian Joobeen". Although from a review accompanying Memorandum Opinion it appears that the bankruptcy court did not intend to limit Ms. Clark's bankruptcy rights, other than in her capacity as Jian's guardian and trustee of Jian's trust, a plausible interpretation of the May 23, 2007 Order would preclude Ms. Clark from filing any subsequent bankruptcy petition without leave of

the bankruptcy court. This relief may indeed be precisely what the bankruptcy court intended. However, without factual findings, no substantive review of the bankruptcy court's disposition can be performed.

Accordingly, because the bankruptcy court's decision does not make any affirmative findings regarding the imputation of its bad faith determination, bankruptcy nos. 06–15749–dws and 06–15752–dws are remanded for the purpose clarifying whether Ali Joobeen's bad faith should be imputed to Jian Joobeen and Kelly Clark.

### Minor's Petition

■■■ Despite their relative rarity, a bankruptcy case may be commenced on behalf of a minor or infant by his or her guardian. Fed.R.Bankr.P. 1004.1. However, the infant on whose behalf the petition is filed must have the capacity to maintain the action. *In re Murray,* 199 B.R. 165 (Bankr.M.D.Tenn.1996). Moreover, as pertinent here, the Bankruptcy Code provides that only individuals with regular income may file for bankruptcy. 11 U.S.C. § 109(e).

■■■ As a general matter, trusts are not eligible for bankruptcy relief. *In re John M. Cahill, M.D. Associates Pension Plan,* 15 B.R. 639, 639–640 (Bankr.E.D.Pa. 1981). However, "if a trust is eligible to be a debtor, then an individual may file a bankruptcy as a trustee on behalf of it." *In re Sanders,* 91 B.R. 317, 322 (Bankr. E.D.Pa.1988)(Scholl, J.).

Although the Bankruptcy Code does not define "individual", it does define "person" to include an individual, partnership or corporation. 11 U.S.C. § 101(41). Under the Bankruptcy Code, the definition of "corporation" includes entities such as business trusts. 11 U.S.C. § 101(9)(A)(v).

■■■ "Unfortunately, the Bankruptcy Code does not define business trust. The various courts that have addressed the issue have applied different factors to determine the existence of a business trust." *In re Eagle Trust,* Civ.A.No. 98–2531, 97–23298, 1998 WL 635845, at *4 (E.D.Pa. Sept.16, 1998)(Kelly, Robert F., J.). Combining the major elements of the factors utilized by other courts, the key elements of a business trust are as follows:

(1) the trust was formed for the primary purpose of transacting business or commercial activity, as opposed to preserving assets;

(2) the trust was formed by a group of investors who contribute capital to the enterprise with the expectation of receiving a return on their investment;

(3) the trust was created in compliance with state law; and

(4) the beneficial interests of the trust must be freely transferable.

*In re Eagle Trust,* 1998 WL at 635845, at *5.

The caption of Jian's bankruptcy case indicates that it was commenced by Ali Joobeen, as trustee and guardian of Jian Joobeen. In Ali's capacity as guardian for Jian, this bankruptcy action appears to be on behalf of Jian individually. However, based upon the record facts, Jian appears to be an individual without regular income. Thus, it appears Jian's case was improperly commenced on an individual basis.

In Ali's capacity as a trustee for Jian, Jian's bankruptcy action appears to be on behalf of a registered Pennsylvania real property trust.[7] However, based upon the

---

7. I do not address whether this trust was properly recorded pursuant to the laws of the Commonwealth of Pennsylvania.

record facts, it appears that this is a real estate trust created for the purpose of preserving assets and is not a business trust. Therefore, because real property trusts cannot be debtors under the Bankruptcy Code, it appears that the action was improperly commenced in Ali's capacity as a trustee.

The bankruptcy court did not make any findings regarding the propriety of the bankruptcy action by the party or trust entity in Jian's bankruptcy case. Without such findings, whether the bad faith determination was correct in the procedural posture of the case cannot be evaluated.

Specifically, if the bankruptcy case was improperly instituted by Ali on behalf of his son individually as well as his son's trust, it is unclear whether bad faith sanctions may be imposed against Jian (because the underlying action is invalid). Stated alternatively, if the action was void ab initio in both capacities for Jian it is not clear whether the action can be dismissed for bad faith.

The determination of whether the action was improper on a capacity basis has implications regarding the bad faith determination. Because this issue was not considered by the bankruptcy court and the issue appears to be one of first impression, the bankruptcy court should consider this issue upon remand.

Accordingly, bankruptcy nos. 06–15749–dws and 06–15752–dws are remanded for the purpose of considering whether the Jian's Chapter 13 bankruptcy case was improperly commenced and, if improperly commenced, whether the bankruptcy court

may reach a finding of bad faith in such circumstances.

### Disruptive Behavior

 Although the precise contours of the inherent powers of the federal courts remains an unsettled question of law, courts "have developed a wide range of tools to promote efficiency in their courtroom[s] and to achieve justice in their results." *In re Tutu Wells Contamination Litigation*, 120 F.3d 368, 383 (3d Cir.1997)(internal citation omitted). Among these inherent powers include the power to punish for contempt, remove a criminal defendant from a courtroom for disruptive behavior, fine, preclude claims or defenses and limit a litigant's future access to the courts. *Id.* Moreover, a court need not find bad faith in all instances before it may utilize its inherent powers. *Republic of the Philippines v. Westinghouse Electric Corporation*, 43 F.3d 65, 74 n. 11 (3d Cir.1995).

The bankruptcy court's decision to remove Ali Jobeen from the witness stand and to preclude him from offering further testimony was both a fair and appropriate sanction. As explained by the bankruptcy court in its May 23, 2007 Opinion, throughout the bankruptcy proceeding Ali's conduct before the court was disruptive and contumacious.

At his first appearance in this action on January 23, 2007,[8] Ali received repeated instructions from the court that he had to answer the questions posed to him and that he should not make speeches. Ali ignored all such warnings. As a result of his conduct, by Order dated January 25,

---

**8.** The docket entries of the bankruptcy court indicate that this proceeding was held on January 23, 2007. At the time of the appeal, no transcript of this proceeding had been completed. Thus, no transcript of the proceeding was included as part of the appellate record. Therefore, because no party has challenged the accuracy of the bankruptcy court's summary of the events that took place during this proceeding, I credit the bankruptcy court's summary of the proceeding for the purpose of this appeal.

2007 Chief Judge Sigmund imposed a fine on Ali in the amount of $50.

At his next appearance on April 27, 2007, Ali's contumacious conduct continued. During the hearing, Ali refused to take a direction from a court security officer.[9] While on the witness stand, Ali would not respond to many of the proper questions posed to him until directed to do so by the court, including the questions posed by the staff attorney of the Chapter 13 Standing Trustee ("staff attorney").[10]

Ali also personally insulted the staff attorney and refused to apologize.[11] Only after Chief Judge Sigmund threatened to preclude him from offering further testimony and after his attorney counseled him during a recess did Ali accede to the court's demand that he apologize to the staff attorney.[12]

After he offered an apology, Ali was specifically warned that if his disrespectful conduct continued he would not be allowed to present further testimony. Chief Judge Sigmund explained to Ali that "if there is one further rudeness or infraction on your part, the consequence will be that you will be excused from the stand and this trial will proceed.... If you cannot behave during direct testimony, you're going to forfeit [the opportunity to be cross examined by your own attorney]." [13]

However, Ali's improper conduct continued. While on the witness stand, Ali persisted in offering evasive testimony and argumentative answers to proper questions.[14] When Ali was asked about the existence of the claims and judgments against him, Ali would dispute the validity of the claims rather than directly answer the question posed.[15]

Absent court intervention, Ali would not directly answer questions regarding the contents of his Chapter 13 Plan or the payments which were owed to the U.S. Trustee pursuant to his plan.[16] After Ali once again insulted the staff attorney, Chief Judge Sigmund Removed Ali from the witness stand and precluded him from offering further testimony.[17]

The bankruptcy court's removal of Ali Joobeen from the witness stand was proper, even applying the framework advanced by appellants. Ali was warned throughout the hearing that his conduct was improper. He was specifically warned that if his conduct continued he would be precluded from offering further testimony. After being afforded a period of time to reflect on his earlier actions and after being warned of the specific sanction which would be imposed by the court, Ali persisted in his contumacious conduct. Thus, the bankruptcy court's sanction of precluding Ali from offering further testimony from the witness stand was proper under its inherent powers.

Accordingly, Chief Judge Sigmund's April 27, 2007 oral Order and May 23, 2007 Order and accompanying Memorandum Opinion are affirmed insofar as they precluded Ali Joobeen from offering testimo-

9. Notes of Testimony of oral argument conducted in Philadelphia, Pennsylvania on April 27, 2007, styled "Transcript of Case No. 06–15749–dws ... Before [the] Honorable Diane W. Sigmund[,] United States Chief Bankruptcy Court Judge" ("N.T."), at page 55.

10. N.T. at 141.

11. N.T. at 143–145.

12. N.T. at 145.

13. N.T. at 146.

14. N.T. at 146–162.

15. N.T. at 150–159.

16. N.T. at 161–162.

17. N.T. at 162–164.

ny during the April 27, 2007 hearing in bankruptcy nos. 06–15749–dws and 06–15752–dws.

### Trustee Bias

Under the Bankruptcy Code, "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause." 11 U.S.C. § 324(a). For instance, where the trustee has a conflict of interest as result of multiple representations in multiple bankruptcy matters, the trustee may be appropriately disqualified. However, such determinations are to be made on a case-by-case basis. *See In re BH & P, Inc.*, 949 F.2d 1300 (3d Cir.1991).

Appellants have alleged that William C. Miller, the Chapter 13 Standing Trustee, through his staff attorney, has acted with bias. The allegations of bias asserted against the trustee in appellants' brief include the following:

(1) "One of appellants claims is that the Trustee, through its agent . . ., has acted to the detriment of other creditors as well as the Debtors in violation of her duties, acted in concert with the creditors." (Brief of Appellants, at 12).;

(2) "[The staff attorney of the trustee] persisted on discussing occurrences at the meeting of creditors, at which Ali stated that [the staff attorney] was 'sitting on [a creditor's] lap almost.'" (Brief of Appellants, at 6).; and

(3) "It should be noted that [the staff attorney of the trustee] has exhibited bias against the Debtors and has used her office for that purpose. . . ." (Brief of Appellants, at 12).

**18.** *See* N.T. at 128–166.

**19.** In the event that appellants become aware of new, previously undiscovered evidence which demonstrates bias by the Chapter 13

Although the trustee took positions that were adverse to appellants, including seeking dismissal of Jian's bankruptcy case and reporting to the court that the debtors had not promptly made their Chapter 13 plan payments, this does not constitute evidence that the trustee was in some way biased against appellants. The record reflects that the trustee and his staff attorney acted appropriately and neutrally at all times.[18]

Appellants never filed any motion seeking disqualification of the trustee or his representative in the bankruptcy court. Appellants formally raised the issue of bias on the part of the trustee for the first time on appeal. However, appellants provided no evidence of bias other than their allegations. Thus, it appears that these allegations were repeated throughout these bankruptcy proceedings solely as a means of impugning the integrity of court officers.

Accordingly, the allegations of bias by the Chapter 13 Standing Trustee need not be considered further and are expressly rejected. Upon remand, neither William C. Miller, the Chapter 13 Standing Trustee, nor any of his representatives shall be disqualified from proceeding in bankruptcy nos. 06–15749–dws and 06–15752–dws.[19]

### Judicial Bias

In challenging the impartiality of a judge, the challenging party must file a motion pursuant to 28 U.S.C. § 144 or 28 U.S.C. § 455. A motion pursuant to § 144 requires that the challenging party file an affidavit stating the facts and reasons for such belief not less than ten days before the beginning of the term at which the

Standing Trustee or his representatives, appellants may present such evidence by an appropriate motion for disqualification to the bankruptcy court.

proceeding is to be heard. 28 U.S.C. § 144; *see In re Johnson–Allen*, 68 B.R. 812, 814 (Bankr.E.D.Pa.1987).

■ The affiant seeking disqualification has the burden of showing that the facts are material and must state them with particularity. Moreover, the affiant must show that such facts, if true, would convince a reasonable man that a bias exists and that such facts show that the bias is personal, as opposed to judicial in nature. *In re Johnson–Allen*, 68 B.R. at 815 (internal citations omitted).

■ Judicial rulings and matters arising from judicial proceedings are generally an improper basis for bias or partiality motions. *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Moreover, prior court rulings do not provide a sufficient factual basis to demonstrate bias. *Bumpus v. Uniroyal Tire Company, Division of Uniroyal, Inc.*, 385 F.Supp. 711 (E.D.Pa.1974).

Appellants accuse Chief Judge Sigmund of flying "into a rage" on two occasions in response to Ali's testimony and thereafter improperly sanctioning Ali. (Brief of Appellants, at 7).[20] Appellants also state that "since Judge Sigmund's own actions are at issue and her conduct of the trial and rendering of a decision providing relief beyond that requested in the motion before her reflect a bias against the Appellants and particularly Ali, this case be reassigned on remand to a judge other than Judge Sigmund." (Brief of Appellants, at 17).

From the passage quoted above, it is clear that appellants' complaints all emanate from the unfavorable judicial rulings that they have received in their bankruptcy cases. The majority of these rulings have been affirmed in the disposition of this appeal. Thus, appellants' allegations of bias are unfounded and will not be countenanced by this court.

There is nothing in the record that suggests "a deep-seated favoritism or antagonism" by Chief Judge Sigmund that would preclude fair judgment. *Liteky v. United States, supra.* Moreover, there are no facts in the record from which a reasonable person would conclude that Chief Judge Sigmund's impartiality might reasonably be questioned. *See* 28 U.S.C. § 455(a); *Edelstein v. Wilentz*, 812 F.2d 128 (3d Cir.1987).

Appellants have been afforded multiple opportunities to take advantage of their rights under the Bankruptcy Code. However, as Chief Sigmund concluded, over the course of several years, appellants have abused their statutory rights under the Bankruptcy Code and filed bankruptcy petitions in bad faith. The fact that Chief Judge Sigmund correctly called out the debtors in these cases does not transform her into a biased jurist.

Accordingly, the allegations of judicial bias by Chief Judge Diane W. Sigmund are expressly rejected. Upon remand, bankruptcy nos. 06–15749–dws and 06–15752–dws may proceed before Chief Judge Sigmund (or any other bankruptcy judge assigned by the court).[21]

---

**20.** First, appellants assert that Chief Judge Sigmund "flew into a rage" after Ali stated that the staff attorney of the Chapter 13 Standing Trustee was "sitting on [a creditor's] lap almost". (Brief of Appellants, at 7, citing N.T. at 143). Second, appellants aver that Chief Judge Sigmund "again flew into a rage" when Ali was answering questions about pay-

ments to the trustee, and stated "Is that for your work, your magnificent legal [work]...." (Brief of Appellants, at 7, citing N.T. at 164).

**21.** In the event that appellants become aware of new, previously undiscovered evidence which demonstrates bias by Chief Judge Sig-

## *CONCLUSION*

For all the foregoing reasons, and the reasons expressed in Chief Judge Diane W. Sigmund's May 23, 2007 Order and accompanying Memorandum Opinion bankruptcy nos. 06–15749–dws and 06–15752–dws, the May 23, 2007 Order is affirmed in part and remanded in part for further proceedings consistent with this Opinion.

Specifically, on remand, Chief Sigmund shall (1) clarify the in rem relief awarded concerning for how long the relief from the automatic stay in bankruptcy is being granted with respect to the Philadelphia real estate; (2) make particularized findings concerning whether the bad faith of Ali Joobeen should be imputed to Jian Joobeen and Kelly Clark; (3) clarify whether the bankruptcy court Order would preclude Kelly Clark from filing any subsequent petition without leave of the bankruptcy court, or only bankruptcy petitions filed in her capacity as trustee and guardian of Jian Joobeen; and (4) determine whether the Jian Joobeen Chapter 13 bankruptcy case was improperly commenced, and if improperly commenced, whether the bankruptcy court may reach a finding of bad faith in such circumstances.

## *ORDER*

NOW, this 27th day of March, 2008, upon consideration of the following documents:

1) Notice of Appeal filed May 23, 2007 by debtor-appellant Ali Joobeen in bankruptcy no. 06–15749–dws (civil action no. 07–CV–2736);

2) Notice of Appeal filed May 23, 2007 by intervenor-appellant Kelly Clark in bankruptcy no. 06–15752–dws (civil action no. 07–CV–2737);

3) Notice of Appeal filed May 23, 2007 by debtor-appellant Jian Joobeen in bankruptcy no. 06–15752–dws (civil action no. 07–CV–2738),

which three consolidated cases appeal from the May 23, 2007 Order and accompanying Memorandum Opinion of Chief United States Bankruptcy Judge Diane Weiss Sigmund of the United States Bankruptcy Court for the Eastern District of Pennsylvania dismissing bankruptcy nos. 06–15749–dws and 06–15752–dws as actions filed in bad faith; upon further consideration of:

(A) Brief of Appellants filed August 6, 2007;

(B) Brief of Dr. Michael Tsokas and Aaron Pogach, Esquire[,] Creditors of Ali Joobeen filed August 21, 2007;

(C) Reply Brief of Appellants filed September 2, 2007;

(D) Brief of Appellee, filed by appellee William C. Miller, U.S. Bankruptcy Trustee, on September 9, 2007; and

(E) Reply Brief of Appellants filed September 20, 2007;

after oral argument held February 12, 2008; and for the reasons expressed in the accompanying Opinion,

*IT IS ORDERED* that the Brief of Dr. Michael Tsokas and Aaron Pogach, Esquire Creditors of Ali Joobeen is stricken.

*IT IS FURTHER ORDERED* that the May 23, 2007 Order of Chief Judge Sigmund is affirmed in part and remanded in part for further proceedings consistent with the accompanying Opinion.

mund, appellants may present such evidence by an appropriate motion for disqualification

to the bankruptcy court.

*IT IS FURTHER ORDERED* that the Clerk of Court shall mark this matter closed for statistical purposes.